FRANK J. RIVELLI *et als. vs.* PROVIDENCE GAS CO.

CITY COUNCIL OF CRANSTON *vs* PROVIDENCE GAS CO.

DECEMBER 9, 1921.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1)   Public Utilities Commission.   Gas.*

Gen. Laws, cap. 345, sec. 53, providing a penalty for wilfully furnishing a meter which does not correctly register the quantity of gas consumed or for collecting a larger sum for gas than appears to be due upon inspection of the meter, does not penalize the collection of a service charge.

*(2)   Public Utilities Commission.   Gas.   Service Charge.*

Upon appeal from an order of the Public Utilities Commission, finding service charge, for use of a gas meter, reasonable, evidence considered and held that such charge was legal, and as it applies to all consumers alike, it cannot be held to be unjustly discriminatory.

*(3)   Public Utilities Commission.   Gas.   Reduction in Standard.*

Upon appeal from an order of the Public Utilities Commission finding that a reduction in standard of gas under the conditions existing was necessary evidence considered and appeal dismissed.

APPEALS from orders of Public Utilities Commission Appeals denied and dismissed.

SWEENEY, J.   These are appeals from an order and decree of the Public Utilities Commission dismissing the complaints of the appellants, and are heard together in this court upon the transcript of the evidence taken before said Commission.

The reason for the complaints was the filing, April 14, 1920, by the Providence Gas Company with the Commission, of a schedule of rates to take effect May 17, 1920. The schedule of rates thus filed increased the rates for gas, provided for a service charge of fifty cents for each meter each month, and lowered the standard of the gas.

The appellants filed objections to the proposed schedule with the Commission, and the city council of Providence also filed its objections to the proposed rates. All of said objections were heard together by said Commission in July, 1920, and at the same time the Gas Company was given an opportunity to introduce testimony to justify the changes made by its proposed schedule. Eight days were occupied in presenting testimony or reading exhibits, and the transscript of the evidence produced in this Court is voluminous.

The Commission made a careful examination and analysis of the evidence presented to it and found that the Gas Company had sustained the burden of proof imposed upon it by showing the necessity for the increased rate; that the service charge was reasonable; that the schedule of rates as filed was just and reasonable; and that the reduction in the standard of gas, under the conditions then confronting the Company, was necessary, and denied and dismissed the complaints on the 14th day of May, 1921.

The city council of Providence claimed no appeal from this action, but the city council of Cranston and the complainants Rivelli and others duly claimed appeals therefrom to this Court.

The appellants claim in their reasons of appeal that the imposition of the service charge is illegal and unreasonable; that the lowering of the standard of gas is unreasonable; and that the proposed schedule of rates is unjustly discriminatory.

The schedule of rates was filed by the Gas Company with the Commission as required by Sec. 48, Chap. 795, Public Laws, 1912, known as the Public Utilities Act, which provides, among other things, that no change shall be made in

existing rates, excepting after thirty days' notice to the Commission and to the public of the changes proposed to be made in the schedule then in effect, and the time when the change of rates will go into effect. The Commission has no authority to fix rates for a public utility excepting when, after a hearing and investigation, it finds that the existing rates are unjust, unreasonable, insufficient or unjustly discriminatory, or to be preferential or otherwise in violation of the provisions of said Public Utilities Act. Sec. 21, Chap. 795, Public Laws, 1912.

The Commission found that the service charge made by the Company, in the schedule of rates under consideration, was reasonable and that if such a charge was not made it would be necessary to directly increase the price of gas.

The appellants now claim that the service charge is illegal because it is in violation of Sec. 53, Chap. 345, General Laws, 1909, which provides, among other things, that every person or corporation who shall wilfully collect a larger sum for gas than appears to be due on inspection of the meter put in to register the same shall be fined not exceeding five hundred dollars. This law does not penalize the collection of a service charge. It only provides a penalty on any person or corporation for wilfully furnishing a meter which does not correctly register the quantity of gas consumed, or who collects a larger sum of money for gas than appears to be due upon an inspection of the meter. It imposes a penalty for using meters incorrectly registering the amount of gas consumed, or for wilfully collecting money for gas not shown by the meter to have been consumed.

The service charge is a uniform charge to all customers which, together with another charge based upon the amount of gas consumed as shown by the meter, constitutes the entire amount to be paid. The service charge is an equal distribution of those burdens incident to the manufacture and distribution of gas which should be borne by all consumers, irrespective of the quantity used. The consumer of gas

pays his equalized cost of the service, and neither the small consumer not the large one is compelled to carry a load that should be shared by both.

The principle of the service charge has been allowed by many public utilities commissions throughout the United States on the ground that it is equitable and just.    In the case of the *Rochester Gas & Electric Corp.*, Public Utilities Rep. Ann., 1921 A, p. 415 at p. 420, in allowing a service charge, the commission said:    "The corporation provides and installs meters and it bears the expense of the pipe from the main to the property line.    Here is an investment upon which it is entitled to a return and which is constant, whether gas is used or not used.    Meters must be inspected and kept in repair and so must the service pipes.    Meters must be read whether gas is used or not, accounts must be kept with the individual consumer and bills must be rendered and accounts collected.    While the rendition and collection of bills is not regardless of whether any gas is consumed, the expense in nowise relates to the amount of the consumption, and it is, therefore, a charge which should be distributed among the customers as a total.    Meters and services depreciate regardless of the consumption and the total depreciation depends upon the number of meters and number of services."

It would be possible to increase the rates for furnishing gas used so as to cover the service charge.    When the consumer uses such a small quantity of gas that the profit upon it will not defray the cost of serving him with it, it is not unreasonable that he should be required to pay for such service in addition to paying for the gas used by him.

The Commission found that the reduction in the standard of gas was necessary under the conditions then confronting the Company.    The Company presented testimony to show that it has ample equipment to produce coal gas and water gas in sufficient quantities to meet the requirements of the people living within the territory served by it.    It was also shown that owing to the extraordinary conditions then

existing it was impossible for the Company to get its necessary supply of gas coal and oil to produce coal gas and water gas, at prices sufficiently low, to enable it to continue to sell gas to its consumers at the proposed rate without lowering the standard or quality of the gas. The testimony also showed that the lowering of the standard of gas would affect the use of gas for illuminating purposes but slightly, as only five per cent of the gas manufactured is used for this purpose, and the objection to the lower standard of gas could be easily overcome by the use of mantles instead of using the open flame burner; and that the lower standard of gas would affect but little its use for heating or industrial purposes.

The claim that the schedule of rates is unjustly discriminatory is based upon the claim that the service charge is illegal and places an unjust burden upon the so-called "small consumer." Inasmuch as we have held that the service charge is legal, and applies to all consumers alike, it cannot be held to be unjustly disciminatory.

An analysis of the testimony is stated at length in the opinion of the Commission and it is unnecessary to incorporate it in this opinion.

After a careful consideration of the facts, as shown by the testimony and the law applicable thereto, the Court is of the opinion that the claims made by the appellants cannot be sustained and, therefore, the order and decree of the Public Utilities Commission appealed from is sustained and affirmed, and the appeals therefrom are denied and dismissed.

*Frank J. Rivelli, Frank H. Wildes,* for appellants.

*Harold W. Thatcher, Frank H. Swan. Swan, Keeney & Smith,* for appellee.