# Duquesne Light Co. et al. *v.* Public Service Commission et al., Appellants.

*Public service companies—Joint rates—Rate classification—Complaints—Presumption—Burden of proof—Confiscation.*

1. Except in the case of joint rates, a complaint against those of utility companies must be limited to the schedules of but one company.

2. Except in the case of joint rates, a complaint covering those of more than one utility company should be dismissed, even though the parties agree to a different procedure.

3. A utility company has the right to classify its rates, both as respects the purpose for which the service is needed and the quantity taken, provided always that the method adopted does not result in unjust, unreasonable, inadequate, unjustly discriminatory or unduly or unreasonably preferential rates to any consumer or class of consumers.

4. Where a complaint is not filed until after the effective date of the tariff complained against, the burden of proof is upon the complainant to show that the rates as to him were unjust, unreasonable or unjustly discriminatory.

5. When the effective date specified in a tariff filed passes without objection, a presumption arises that the classifications appearing therein are equitable and just, that the total probable revenue will not exceed that to which the utility company is entitled, and, on the hearing of any complaint thereafter filed, the utility company is entitled, in the first instance, to rely upon these presumptions.

6. Under such circumstances, each customer of the utility company is entitled to rely, in the first instance, upon the presumption that the rate which he is charged is just and reasonable and will not be changed except as the result of a new tariff or by an alteration of the existing tariff, after he has been given an opportunity to be heard.

7. If the complaint made by a particular customer is simply that he is being charged a different rate from that specified in the tariff on file, the commission may consider and decide it without notice to any other customer and without considering what effect it will have on the utility company's total revenue.

8. If, however, the complaint is in effect against the tariff itself, the complainant, when he has the burden of proof, must be prepared to show not only that the rates are unjust, unreasonable or dis-

criminatory as to him, but, if notice has been given to the utility company only, at least that the result of the change desired will not deprive it of the revenue to which under the law it is entitled.

9. A utility company's right to a sufficient revenue is of as high a character as a consumer's right not to be discriminated against; the adequate revenue is the fixed factor, the apportionment of it is a relative matter and necessarily changes whenever the rates to any consumer or class of consumers are so altered as to reduce the total revenue below that to which the utility company is entitled.

10. Confiscation pro tanto is the necessary effect of sustaining a complaint which so alters the tariff on file as to give to a utility company less than the revenue to which it is entitled; hence, such a complaint should be dismissed unless the other schedules are so altered as to restore the total revenue to the proper amount.

11. An order of the Public Service Commission, which results in reducing a utility company's revenue below a fair return and does nothing further, is unreasonable, under article VI, section 24, of the Public Service Company Law, and the Superior Court which permitted it is required to reverse and set it aside.

12. Contracts between a utility company and its consumers cannot be sustained if they result in preventing the former from so increasing its charges to the latter as to deprive the company of an adequate revenue.

13. The Public Service Company Law is to be so construed as to give effect to its paramount purpose of allowing to the company an adequate revenue so distributed among its consumers that the rates charged shall not be unjust, unreasonable, inadequate, unjustly discriminatory or unduly or unreasonably preferential as to any thereof.

Argued January 19, 1922. Appeals, Nos. 194 and 198, Oct. T., 1921, by Adelaide H. C. Frick et al., from judgment of Superior Court, April T., 1921, No. 110, reversing order of Public Service Commission, Complaint Docket No. 2942, in case of Duquesne Light Company and Allegheny County Steam Heating Co. v. Public Service Commission of the Commonwealth of Pennsylvania, and Adelaide H. C. Frick et al., executors of Henry C. Frick, deceased, et al. · Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Appeal from judgment of Superior Court.   See 77 Pa. Superior Ct. 8.

The opinion of the Supreme Court states the facts.

Judgment of Public Service Commission reversed. Adelaide H. C. Frick et al., executors of Henry C. Frick, deceased, et al., defendants, appealed.

*Error assigned,* inter alia, was judgment, quoting it.

*George B. Gordon,* with him *John G. Buchanan* and *Frank B. Ingersoll,* for appellants.—Where the consumer complains to the commission against the new rate and founds his complaint upon his contract right, and introduces the contract in evidence, the burden is upon the public service company to show that it has the right to change the rate because of some public necessity: Fogelsville & T. Electric Co. v. Penna. P. & L. Co., 271 Pa. 237.

It is a matter for the commission to determine just exactly how far it will require the complainant to go forward with his proof before it calls upon the public service company for an explanation: B. & O. R. R. v. Pub. Serv. Comm., 66 Pa. Superior Ct. 403; Diehl v. Pub. Serv. Comm., 69 Pa. Superior Ct. 419; Coplay Cement Mfg. Co. v. Pub. Serv. Comm., 271 Pa. 58; Vernon Twp. v. Pub. Serv. Comm. 75 Pa. Superior Ct. 54.

The action of the commission in this case was subject only to a judicial review to determine whether or not there was any evidence to sustain the order made: Ohio Val. Water Co. v. Ben Avon Borough, 253 U. S. 287; Oklahoma Operating Co. v. Love, 252 U. S. 331; Schuylkill Ry. Co. v. Pub. Serv. Comm., 71 Pa. Superior Ct. 204; Harmony Electric Co. v. Pub. Serv. Comm., 71 Pa. Superior Ct. 355; Wilkes-Barre Co. v. Pub. Serv. Comm., 70 Pa. Superior Ct. 464; Bethlehem City Water Co. v. Pub. Serv. Comm., 70 Pa. Superior Ct. 499; V. & S. Bottle Co. v. Pub. Serv. Comm., 70 Pa. Superior Ct. 308; B. & O. R. R. v. Pub. Serv. Comm., 68 Pa. Superior Ct.

503; Rochester B. & L. A. v. Beaver Val. Water Co., 68 Pa. Superior Ct. 122; Penna. R. R. v. Pub. Serv. Comm., 67 Pa. Superior Ct. 575; B. & O. R. R. Co. v. Pub. Serv. Comm., 66 Pa. Superior Ct. 403; Mount Union Boro. v. Mount Union Water Co., 63 Pa. Superior Ct. 337; Adams v. Pub. Serv. Comm., 77 Pa. Superior Ct. 381; Lansdowne Boro. v. Pub. Serv. Comm., 74 Pa. Superior Ct. 203; Foltz v. Pub. Serv. Comm., 73 Pa. Superior Ct. 24; Damiani v. Pub. Serv. Comm., 73 Pa. Superior Ct. 37; Henderson Coal Co. v. Pub. Serv. Comm., 73 Pa. Superior Ct. 45.

The evidence in this case fully justified the commission in requiring a separate classification in the companies' rate schedules applicable to the service rendered to the appellants and to such other of their patrons as should thereafter fall within such classification: Louisville & Nashville R. R. v. Finn, 235 U. S. 601; Interstate Commerce Comm. v. Louisville & Nashville R. R., 227 U. S. 88; West Virginia Pulp & Paper Co. v. Pub. Serv. Comm., 65 Pa. Superior Ct. 5; Penna. Power Co. v. Pub. Serv. Comm., 66 Pa. Superior Ct. 448; Spiller v. Atchison, T. & S. F. Ry., 253 U. S. 117.

*Edwin W. Smith,* of *Reed, Smith, Shaw & Beal,* with him *A. W. Robertson,* for appellees.—The contracts are ineffective as against higher published rates: Leiper v. R. R., 262 Pa. 328; Schaper v. Ry., 265 Pa. 109; V. & S. Bottle Co. v. Gas Co., 261 Pa. 523; Klein-Logan Co. v. Light Co., 261 Pa. 526; Armour Packing Co. v. United States, 209 U. S. 56; Suburban Water Co. v. Oakmont Boro., 268 Pa. 243.

There is always a presumption that the schedule rates of a public service company under which it carries on its business, are just and reasonable rates: B. & O. R. R. v. Pub. Serv. Comm., 66 Pa. Superior Ct. 403.

*John Fox Weiss* and *Frank M. Hunter,* for Public Service Commission.

OPINION BY MR. JUSTICE SIMPSON, March 20, 1922:

Henry C. Frick filed with the Public Service Commission a single petition, in the nature of a complaint, alleging discrimination against three of his properties, in each of two separate tariffs on file with the commission; one that of the Duquesne Light Company, and the other that of the Allegheny County Steam Heating Company, corporations having separate customers, though the corporate stock of the latter was owned by the former. The commission sustained the complaint; the Superior Court reversed and dismissed it; and from this decree we allowed the present appeal by his executors and trustees, he having died pending the proceedings. Appellees stated in the Superior Court that they did not object to the complaint because made against separate tariffs of different corporations; but such a course should not have been permitted even by agreement, the incongruity of so proceeding being apparent, especially since it rendered difficult, if not practically impossible, the requisite procedure, hereinafter detailed, which was essential to a proper determination of the questions raised. We had occasion to condemn this objectionable method in Citizens Passenger Railway Co. v. Public Service Commission, 271 Pa. 39, 55, where we said: "except in the case of joint rates, those of each utility company must be separately considered, and complaints against two or more cannot be joined together any more than two companies can jointly file a schedule of rates, those of one having no relation to those of the other; and this is true even if one is a customer of the other."

On November 15, 1916, Mr. Frick was the owner of the Frick Building and the Frick Building Annex, in the City of Pittsburgh, and had previously installed therein plants for the generation of electricity and steam, for the supply of light, heat and power to said buildings and their occupants. At that time he was constructing the Union Arcade Building in said city, which would likewise require light, heat and power, and, by making the

necessary changes and additions, possibly they also could be supplied from the same source. On that date, four several contracts were entered into, which may be summarized as follows: (1) An agreement by which he sold the plants to the Duquesne Light Company, at an appraised valuation of $50,000; (2) A lease by him to the light company of the portion of the building in which those plants were located, for a term of twenty-five years, at an annual rent of $10,000; (3) An agreement by the light company to supply electricity to the three buildings and their occupants, for a period of twenty-five years, the rate for the first five years to be that set forth in the light company's tariff, then on file with the Public Service Commission; but to be varied, up or down, at the expiration of each five-year period, according to a ratio determined by the average price of coal; and (4) An agreement by the Allegheny County Steam Heating Company to supply steam to the three buildings for a period of twenty-five years, the rate for the first five years to be that set forth in the heating company's tariff, then on file with the commission, but to be varied, up or down, at the expiration of each five-year period, exactly as in the light company's agreement. Nothing appears on this record from which an inference could properly be drawn that at this time the appraised value of the plants was less than their real value, or that the annual rent agreed to be paid was less than could have been obtained by a lease of the premises to other parties; hence, even though the four contracts are to be construed together, there is nothing to justify the conclusion that there was any special consideration for the rates specified in the last two agreements, even if appellees could have contracted legally for anything else than they did, namely, for the rates specified in the tariffs then on file.

On September 8, 1917, the heating company filed with the commission a new tariff effective October 8, 1917; and on May 1, 1918, the light company also filed a new tariff, effective May 31, 1918. It is to be presumed that

Mr. Frick received notice thereof, since they were, so far as appears, posted and published as provided by law. The changes made materially altered the rates to him and to all other consumers; but, as to the contracts on which appellants base their complaint, only changed the tariff rates specified therein in exactly the way the law provided they could be changed.

For some months after the new rates went into effect, the companies, under the impression that the new tariffs would not supersede the contract rates, sent bills to Mr. Frick in accordance with the latter, but on October 3, 1918, they were sent in conformity with the new tariffs. He acknowledged receipt of the bills but refused to pay except at the contract rates. Each month thereafter, he received and ignored bills which were sent to him at the tariff rates; but he did nothing in regard to the matter until the latter part of August, 1919, when he filed with the commission the complaint above noted, asking it to order the two companies to deliver electricity and steam to the three buildings at the contract rates. The effect of his delay in proceeding was to put on him the burden of proof of showing the new rates were "unjust or unreasonable or inadequate, or unjustly discriminatory": Baltimore & Ohio Railroad Co. v. Public Service Commission, 66 Pa. Superior Ct. 403; Suburban Water Company v. Oakmont Borough, 268 Pa. 243.

Answers were filed, and, at the first meeting for producing evidence, Mr. Frick's counsel stated: "The claim of the petitioner is: first, that these contracts are good contracts; second, that irrespective of whether the contracts are good or bad, the contract rates are remunerative. We now stipulate of record that in this case we will not attempt to show the value of the entire property of the respondent, *nor will there be any effort made to prove that the total revenue received by the respondent is excessive.* We don't wish to go into a hearing at all, and for the purpose of this hearing we waive any such questions. In other words, we will try this case on the

question of the contracts and on the question of discrimination as against Mr. Frick."

This position appellants maintained throughout, the commission reporting that "Guided by the above statements of counsel, no evidence was introduced by either side showing the operating cost of furnishing service to the complainant." Testimony was produced by the heating company, however, which tended to show that, owing to the changed conditions regarding labor and materials, the cost of producing the steam was in excess of the contract price therefor; and by the light company that the profit to it would be about two per centum if it was compelled to deliver at the contract rate. This evidence was received under objection, the question of its admissibility being reserved; evidently it was not considered, since it is not referred to in the opinion or order of the commission. This was a grave mistake, since the evidence was of itself sufficient, unless rebutted, to require a dismissal of the complaint; not only did it tend to show that, under the new tariff as filed, appellees were only receiving a fair return, based upon a fair valuation, but it also accorded with the provision of the contracts, which specified that, if there should be an increase in the cost, it would be met by an increase in the rates.

By its order, the commission directed respondents to file "a supplemental tariff, providing for other [new] classifications than those now on file, which would be applicable to service rendered for steam heat and electric light and power in the Frick buildings mentioned, and to such other patrons as may hereafter fall within these classifications," the two new schedules being required to embody the rate features of the contracts of November 15, 1916. The effect of this would be to restore to appellants the contract rates, without determining or even considering whether the schedules against which they complain, as thus amended by the commission, would yield to the two companies the fair return to

which they were entitled, and without which confiscation pro tanto would necessarily result.

While the Public Service Company Law in no uncertain terms forbids rates which are "unjust or unreasonable or inadequate, or are unjustly discriminatory or unduly or unreasonably preferential," it nevertheless permits such classifications thereof as do not offend against the provision quoted; and hence a utility company has the right (which appellees have exercised in their new tariff, now objected to), to divide its customers into groups, according to the purpose for which the electricity or steam is needed, these being subdivided into classes according to the quantity taken; each group and its subdivisions being set forth in a separate schedule, and the whole of the schedules forming the tariff filed with the commission, and binding alike upon the company and its customers. When this is done, and the effective date of the tariff passes without objection being made, a presumption arises that these divisions and subdivisions are equitable and just, and that the total probable revenue, which the utility will receive thereunder, will equal and not exceed that to which it is entitled. The company is entitled to rely upon this presumption, in the first instance, on the hearing of any complaint filed with the commission, after due notice to the utility to appear and defend; and after the passage of the effective date without objection, each consumer is entitled to rely, in the first instance, upon the presumption that the rate he is charged is just and reasonable, and will not be changed except as the result of a new tariff duly filed, or by the existing tariff being altered, after he has been given an opportunity to be heard.

It follows from what has been said that when complaint is made by a particular customer, alleging he is being charged at a different rate from that specified in the tariff on file, the commission may order that he be charged only according to the tariff rate; and this without notice to any other customer, and without consider-

ing whether or not the effect will be to reduce the utility's total revenue below that to which it is entitled; for in no event can it charge more than the schedule rate, its remedy, in the possibility suggested, being to file a new or amended tariff.

On the other hand, if the effect of sustaining the complaint would be to alter the schedules themselves, although only so far as affects the complainant, if, as here, he has the burden of proof, he must be prepared to show, that the rates on file are unjust, unreasonable or discriminatory as to him, and also,—if he elects to proceed with notice to the utility only,—at least that the result of changing the schedule will not deprive the company of the revenue to which, under the law, it is entitled. This right to a sufficient return is legally of as high a character as is appellant's right not to be discriminated against; indeed the adequate revenue is the fixed factor, the apportionment of it is a relative matter and necessarily may change whenever the rate to any consumer or class of consumers is altered, for if the rate to one is reduced that to others must be increased accordingly, unless it is proved "at least" that the reduction will still leave sufficient revenue to the utility company, which presumptively it will receive only while the schedules are unchanged. We say "at least," because we do not wish to appear to foreclose the question as to whether or not the tariff can thus be altered on the complaint of a single customer, this point not being necessarily involved here.

The application of these rules to the present case leaves the result free from doubt. When appellants refused to prove how the changes desired would affect appellees' revenues, and especially when the companies showed that the effect would be to so reduce those revenues as to result in pro tanto confiscation, the commission should have at once dismissed the complaint, or should have proceeded, under the powers it possesses, to examine all the schedules, after such notice to other cus-

tomers as it deemed requisite (not necessarily personal notice, however), in order that they might have an opportunity to be heard. This is especially required in complaints of the present character, since, except as regards the necessity for an equitable distribution of payment among the different classes of patrons, the utility companies have little or no interest in the determination of who shall pay, but only in obtaining an adequate income, no matter from whom received. Upon the necessary investigation, conducted under the circumstances and in the way stated, the commission was clothed with the power and charged with the duty of fixing the total revenue to which appellees were entitled, and should then have directed its equitable and just apportionment among the various classes of consumers. Thus and only thus could everybody have been protected, and the purpose of the Public Service Company Law accomplished.

In the present instance this duty was wholly ignored, with the result, if the presumption is applied or the uncontradicted evidence believed, that partial confiscation will necessarily result, notwithstanding repeated warnings thereagainst (Ben Avon Borough v. Ohio Valley Water Co., 253 U. S. 287), and with the certainty that because of this fact the order made was an "unreasonable" one, which article VI, section 24, of the Public Service Company Law (P. L. 1913, p. 1427) required the Superior Court to reverse and set aside. As that court did this, we must necessarily affirm its decree, both because the complaint was improper in form and was improperly proceeded with; but we do so without prejudice to appellants' right to proceed, if they choose so to do, by appropriate separate proceedings against each corporation, after such notice to all parties concerned as the commission may prescribe.

In view of this conclusion, the other matters, upon which appellants laid so much stress, need not now be considered; but it may not be inappropriate to add, that,

if the contracts are to be held binding under all circumstances, as at one time appeared to be appellant's claim, then the statute but slightly changes the preëxisting law, so far as concerns this matter, and the scandals growing out of favored terms being given to friends of the management, will be revived, although it was the intent of the Public Service Company Law to cut up by the roots all such possibilities. On the other hand, if the contracts, without other evidence, are to be so construed as to compel appellees to give to appellants a preferential rate by putting the latter in a class by themselves, as appears later to have been contended, not only are they thus given a great advantage over other large consumers (though the contracts themselves do not give it), but the foregoing objection will still remain, though slightly modified in form.

The decree of the Superior Court is affirmed without prejudice, and the appeal is dismissed at appellant's cost.