## ATTLEBORO STEAM & ELECTRIC CO. v. NARRAGANSETT ELECTRIC LIGHTING CO.

(District Court, D. Rhode Island. February 12, 1924.)

No. 173.

1. **Corporations ⬡370(2)—One dealing therewith chargeable with knowledge of power, and statutory limitation thereon.**

   One who deals with a corporation, whether he be a citizen of the same or another state, is chargeable with knowledge of its corporate power, and of any statutory limitation on or reservation of legislative control over its exercise of powers granted by the state of its creation.

2. **Electricity ⬡11—Finding of commission that old rate unreasonable necessary to abrogate it.**

   Under Pub. Laws R. I. 1912, c. 795, § 48, as amended by Pub. Laws 1918, c. 1651, the Public Utilities Commission cannot fix a new rate for electrical power without a determination of the propriety of the change, and without a finding that existing rates are unjust, unreasonable, insufficient, or unjustly discriminatory as provided in section 21.

3. **Electricity ⬡11—Before contract can be interfered with under police power it must appear contract affects public welfare.**

   Before a contract fixing charges for electrical power can be interfered with under the police power, it must appear that the contract does in some manner affect adversely the welfare of the public, and under Pub. Laws R. I. 1912, c. 795, § 48, as amended by Pub. Laws 1918, c. 1651, it is the duty of a company seeking a change in rates to sustain the burden of proof that the increase is necessary in order to obtain a reasonable compensation for its service.

4. **Electricity ⬡11—Unprofitable rates not subject to change as in public interest.**

   A finding that a single contract of a power company was for the time being unprofitable could not establish the fact that the public interest had been injuriously affected, so as to warrant a change of contract rates under Pub. Laws R. I. 1912, c. 795, § 48, as amended by Pub. Laws 1918, c. 1651.

5. **Injunction ⬡59(2)—Cutting off of electrical energy enjoined.**

   Where power company furnishing electrical energy to an electrical company furnishing power to customers in a city threatened to cut off the supply to coerce a yielding to an illegal demand for increased rates, the case was a proper one for equitable relief by injunction.

---

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. **Public service commissions ⊜⟶19½, New, vol. 12A Key-No. Series—Remedies under state Public Utilities Act need not be exhausted before seeking injunctive relief.**

In an action to enjoin a Rhode Island power company from cutting off supply of electricity in an effort to coerce plaintiff in yielding to an illegal demand for increased rate, a contention that plaintiff had not adopted and exhausted its remedies under Pub. Laws R. I. 1912, c. 795, § 18, by complaint before the commission, with an appeal to the Supreme Court of Rhode Island under section 34 was without merit, where the only question in issue was whether defendant's claim that it had been relieved by legislative authority from contract rate had legal foundation; the only question that would arise under section 18 being as to the reasonableness of the rate, an administrative question, and the suit being between citizens of different states.

7. **Electricity ⊜⟶11—Power company could not change own contract rates.**

Under Pub. Laws R. I. 1912, c. 795, § 48, as amended by Pub. Laws 1918, c. 1651, the mere filing of a new schedule by a power company is not in itself a valid method of changing contract rates, since a power company cannot itself exercise the police power of the state to relieve it in the public interest from a burdensome contract, and its judgment cannot be accepted by a court as a sufficient ground for disregarding the contract rights of a complaining consumer.

8. **Injunction ⊜⟶189—Relief granted on condition of assumption by plaintiff of obligations.**

Relief by injunction restraining power company from cutting off electrical energy to coerce payment of new rates illegally fixed should be granted only on condition of performance by the plaintiff of its obligations under its contract with the power company, and payment of interest earned on deposits held pending litigation, as an increment of the amount due belonging to defendant.

In Equity. Bill by the Attleboro Steam & Electric Company against the Narragansett Electric Lighting Company. Decree for plaintiff.

Robert G. Dodge and Harold S. Davis, both of Boston, Mass., and Archibald C. Matteson, of Providence, R. I., for plaintiff.

A. R. Graustein and Ropes, Gray, Boyden & Perkins, all of Boston, Mass., and Arthur M. Allen and Hinckley, Allen, Tillinghast & Phillips, all of Providence, R. I., for defendant.

BROWN, District Judge. This is a bill in equity, brought by the Attleboro Steam & Electric Company, a Massachusetts corporation, against the Narragansett Electric Lighting Company, a Rhode Island corporation, to enjoin the defendant from cutting off the plaintiff's supply of electrical energy so long as the plaintiff conforms to the terms of a written contract dated May 8, 1917, whereby the defendant undertook to sell and deliver to the plaintiff during a term of 20 years all the electrical energy to be supplied by the Attleboro Company to its customers in Attleboro, Mass.

The bill alleges that the plaintiff has no generating plant and is unable to obtain from any source, other than the defendant, any substantial supply of electrical energy, and that if the defendant's threat to cut off plaintiff's supply of electrical energy should be carried out, the city of Attleboro would be deprived of electrical energy and power to the incalculable damage of the plaintiff and of the citizens of Attleboro.

The principal dispute between the parties arises from the demand by the Narragansett Company for an increased charge for electrical · energy.

The plaintiff insists that the rate fixed by the contract of May 8, 1917, and approved by the Public Utilities Commission of the state of Rhode Island, is still in force. This rate is shown in schedule described as R. I. P. U. C. No. 68 (Exhibit 2 in the present case).

The defendant contends that this contract rate has been superseded by a new schedule of rates, applicable to this contract alone, filed on April 6, 1921, with the Public Utilities Commission, and by its order of April 27, 1921, put in effect as R. I. P. U. C. No. 101 (Exhibit 4 in the present case).

As the Rhode Island Public Utilities Act (Public Laws 1912, c. 795) was in force before the making of the contract of May 8, 1917, and as the Narragansett Electric Lighting Company was within the term "public utility" as defined by that act, the Attleboro Company had full notice that it was dealing with a Rhode Island corporation of limited power to contract, and subject to continuous regulation in the public interest through an administrative legislative agent, the Public Utilities Commission.

The plaintiff contends that the contract of May, 1917, relates to in-· terstate commerce, and that the Rhode Island statute affecting public utilities was intended to regulate only the rights of residents of Rhode Island with respect to service rendered in that state.

As it is apparent that losses upon contracts for the delivery of electrical energy for use outside the state might affect the financial ability of the Narragansett Company to render service in Rhode Island at reasonable rates, and that there might thus result a discrimination in rates which would be unfavorable to residents of Rhode Island and favorable to the residents of Massachusetts engaged in the same lines of industry, we should be reluctant to accept the contention that, though the corporate capacity of the Narragansett Company to contract with citizens of Rhode Island is plainly limited and subject to legislative control through the Public Utilities Commission, yet in making contracts with corporations or citizens of contiguous or remote states for the supply of electricity generated in Rhode Island it is free from such control.

[1] One who deals with a corporation, whether he be a citizen of the same or another state, is chargeable with knowledge of its corporate power, and of any statutory limitation upon, or reservation of legislative control over, its exercise of corporate powers granted by the state of its creation.

Without further discussion of the question whether or not the contract relates to interstate commerce, and whether the acts of the Public Utilities Commission relevant to the present case are invalid as an attempt to fix rates for interstate commerce, we may assume for the purposes of this case that we have to deal with a contract made by the defendant with a Rhode Island corporation, whose contractual powers were limited and subject to continuous regulation by the Public Utilities Commission of Rhode Island, at least in the absence of any attempt by

Congress to act under its power to regulate interstate commerce. See Pennsylvania Gas Co. v. Public Utilities Commission, 252 U. S. 23, 29, 31, 40 Sup. Ct. 279, 64 L. Ed. 434.

The principal question in this case is what effect upon a special rate formerly established by contract between the parties and approved by the Public Utilities Commission of Rhode Island is to result from the following proceedings before the Public Utilities Commission:

Narragansett Electric Lighting Company,

Executive Offices, Turks Head Building, Providence, R. I.

Public Utilities Commission, State of Rhode Island—Gentlemen: We are filing herewith R. I. P. U. C. No. 101, canceling R. I. P. U. C. No. 68, for the purpose of increasing the rate paid by the Attleboro Steam & Electric Company for electricity.

We respectfully request that you waive the statutory notice and allow this rate to become effective on all electricity billed on and after April 1, 1921.

Very truly yours,          [Signed]  E. A. Barrows, President.
Stamped: Received April 6, 1921.
                    Public Utilities Commission, State of Rhode Island.
Stamped: In Regular Session, Public Utilities Commission, April 27, 1921.
Consent granted.  Order No. 584.          G. A. Carmichael, Secy.
A true copy.  Attest:
[Signed]  George A. Carmichael, Secretary.

R. I. P. U. C. No. 101, Canceling R. I. P. U. C. No. 68.

Narragansett Electric Lighting Company.

Special Rate to Attleboro Steam & Electric Company.

Character of Service. Electricity to be delivered to the Attleboro Company at the East Providence substation of the Narragansett Company, or at such other point or points as may be mutually agreed upon by the parties, at 22,000 or other agreed voltage. Said electricity to be in the form of three-phase sixty-cycles alternating current.

Conditions. The Attleboro Company to receive electricity at said East Providence substation and to bear all expense of transmitting the electricity thus received.

Rate. (a) A service charge of such amount as will equal the cost to the Narragansett Company of taxes, insurance, depreciation, obsolescence, and any other fixed charges and net the Narragansett Company an 8 per cent. dividend upon that portion of the cost of the plant which can properly be allocated to the generation of electricity for and the delivery of such electricity to the Attleboro Company.

(b) A charge per kilowatt hour for all electricity delivered which shall be equal to the cost per kilowatt hour to the Narragansett Company of generating and delivering such electricity to the Attleboro Company at said point of delivery plus a fixed addition thereto of one·mill per kilowatt hour.

(c) A charge equal to any and all taxes paid by the Narragansett Company on account of or having relation to the electricity generated for or sold or delivered to the Attleboro Company or any payments receivable or received by the Narragansett Company therefor, including the payment received as a service charge or otherwise incidental to or arising out of the service rendered or to be rendered by the Narragansett Company to the Attleboro Company.

Discounts. The above rate ·is net.
Term of Contract. April 1, 1921, to April 1, 1938.
Effective on all electricity billed on and after April 1, 1921.
A true copy. Attest:
                    [Signed]  George A. Carmichael, Secretary.
Stamped: Received April 6, 1921.
                    Public Utilities Commission, State of Rhode Island.

Public Utilities Commission of Rhode Island.

Petition of Narragansett Electric Lighting Company filed with accompanying schedules on the 6th day of April, A. D. 1921, requesting waiver of statutory 30 days' notice upon a certain rate schedule R. I. P. U. C. No. 101, canceling R. I. P U. C. No. 68, for the purpose of increasing the rate paid by the Attleboro Steam & Electric Company for electricity considered on the 6th day of April, A. D. 1921, at an informal hearing at which representatives of both companies were in attendance and heard.

It appearing that a continuance of the operation of the terms of the rate contract between said companies would result in a loss to the petitioning company, and would therefore discriminate against its other consumers, and action upon said petition having been deferred by the Commission in order that said companies might continue negotiations for the purpose of arriving at a mutually satisfactory and equitable modification of said rate contract;

It now appearing that such negotiations have been without result:

Upon consideration, it is—

Ordered that, for good cause shown, said Narragansett Electric Lighting Company be and it hereby is authorized to put into effect without the statutory publication and notice to the Commission, tariff R. I. P. U. C. No. 101, canceling R. I. P. U. C. No. 68, for the purpose of increasing the rate paid by the Attleboro Steam & Electric Company for electricity.

April 27, 1921.                                                      No. 584.

A true copy. Attest:

[Signed]   George A. Carmichael, Secretary.

The defendant, Narragansett Electric Lighting Company, contends that it has followed the procedure prescribed in the last paragraph of section 48 of the Public Utilities Act of 1912 (Public Laws of Rhode Island, c. 795, as amended by chapter 1651, Public Laws 1918).

'Sec. 48. [As amended by chapter 1651, Public Laws, 1918.] Every public utility shall file with the commission within a time to be fixed by the commission, schedules which shall be open to public inspection, showing all rates, tolls and charges which it has established and which are in force at the time for any service performed by it within the state, or for any service in connection therewith or performed by any public utility controlled or operated by it. A copy of so much of said schedules as the commission shall deem necessary for the use of the public shall be printed in plain type, or typewritten, and kept on file in every station or office of such public utility where payments are made by the consumers or users, open to the public in such form and place as to be readily accessible and conveniently inspected, and as the commission may order. The commission may determine and prescribe the form in which the schedules, required by this section to be kept open to public inspection, shall be prepared and arranged, provided, that with respect to public utilities subject to the federal 'Act to Regulate Commerce,' so-called, the form of such schedules shall be that from time to time prescribed by the Interstate Commerce Commission. No change shall be made in the rates, tolls, and charges which have been filed and published by any public utility in compliance with the requirements of this section, except after thirty days' notice to the commission and to the public published as aforesaid, which shall plainly state the changes proposed to be made in the schedule then in force, and the time when the changed rates, tolls or charges will go into effect. Whenever the commission receives such notice of any change or changes proposed to be made in any schedule filed under the provisions of this section, it shall have power either upon complaint as specified in section eighteen hereof, or upon its own motion and upon such notice as provided for in section twenty hereof to hold a public hearing and make investigation as to the propriety of such proposed change or changes. After notice of any such investigation, the commission shall have power by any

order served upon the public utility affected to suspend the taking effect of such change or changes pending the decision thereon, but not for a longer period than three months beyond the time when such change or changes would otherwise take effect. After such hearing and investigation either upon complaint as specified in section eighteen hereof or upon its own motion, the commission may take such order in reference to any proposed rate, toll or change as may be proper. At any such hearing involving any proposed increase in any rate, toll or charge, the burden of proof to show that such increase is necessary in order to obtain a reasonable compensation for the service rendered shall be upon the public utility: *Provided, that the commission may, in its discretion and for good cause shown, allow changes within less time than required by the notice herein specified, and without holding the hearing and investigation herein provided for or modify the requirements of this section with respect to filing and publishing tariffs either in the particular instance or by general order applicable to special or particular circumstances or conditions.*"

[2] The plaintiff contends that procedure under that paragraph did not result in a finding of the commission that the old rate was unreasonable or that the new rate was reasonable, and that the filing of a schedule of changed rates under that section cannot accomplish the result of abrogating contract rates.

Plaintiff relies upon Wichita Railroad v. Public Utilities Commission, 260 U. S. 48, 56, 57, 43 Sup. Ct. 51, 67 L. Ed. 124.

The defendant attempts to distinguish this case as a decision upon a procedural point under a statute different, in that it expressly required a finding of the commission as to the unreasonableness of the old rate and the reasonableness of the new rate.

But we cannot regard section 48 as indicating that a contract rate can be abrogated without a finding, after a hearing and investigation, that it is unreasonable.

The commission in section 48 is given power to make such order as may be proper after hearing and investigation and after the public utility has sustained the burden of proof as to necessity.

Should we assume, as defendant contends, that the Public Utilities Act contains no other provision which in terms is applicable, and that therefore the right of the public utility to change a contract rate must be worked out under section 48, it would follow that any authority of the commission to make such order as "may be proper" and as should determine the necessity, in the public interest, to make a change, cannot be exercised without a determination of the propriety of the change.

Furthermore it is said (260 U. S. at page 59, 43 Sup. Ct. 55, 67 L. Ed. 124) in said opinion:

"In creating such an administrative agency the Legislature, to prevent its being a pure delegation of legislative power, must enjoin upon it a certain course of procedure and certain rules of decision in the performance of its function."

In view of the provisions of section 21 of the act, which fixes the rules for decision, and makes the power of the commission to institute new rates conditional upon a finding that existing rates are "unjust, unreasonable, insufficient or unjustly discriminatory, or to be preferential or otherwise in violation of any of the provisions of this act," as well as upon a finding that the substituted rate "shall be just and

reasonable," it cannot be held that it was the legislative intention by a mere proviso in section 48 to dispense with such findings when the public utility itself seeks relief under section 48.

It seems clear that the public utility cannot by a mere consent of the commission dispense with proceedings or rules of decision clearly laid down in section 21 of the act and also in the body of section 48 preceding the proviso.

In Arkansas Gas Co. v. Railroad Commission, 261 U. S. 379, on pages 382 and 383, 43 Sup. Ct. 387, 388 (67 L. Ed. 705), it is said:

"While a state may exercise its legislative power to regulate public utilities and fix rates, notwithstanding the effect may be to modify or abrogate private contracts (Union Dry Goods Co. v. Georgia Public Service Corporation, 248 U. S. 372, 375; Producers' Transportation Co. v. Railroad Commission, 251 U. S. 228, 232), there is, quite clearly, no principle which imposes an obligation to do so merely to relieve a contracting party from the burdens of an improvident undertaking. The power to fix rates when exerted, is for the public welfare, to which private contracts must yield; but it is not an independent legislative function to vary or set aside such contracts, however unwise and unprofitable they may be. Indeed the exertion of legislative power solely to that end is precluded by the contract impairment clause of the Constitution. The power does not exist per se. It is the intervention of the public interest which justifies and at the same time conditions its exercise."

In the records of the proceedings of the commission we find no sufficient statement of any finding made after hearing and investigation upon the question of the unreasonableness of the contract rate or of the reasonableness or propriety of the new rate, unless in the following recital:

"It appearing that a continuance of the operation of the terms of the rate contract between said companies would result in a loss to the petitioning company and would therefore discriminate against its other customers."

The finding that the contract was unprofitable and therefore discriminatory rested upon ex parte statement, and moreover is a non sequitur.

That the initial return was low and that profit was expected during later years was stated in the defendant's application to the commission for approval of the contract rates. There was no finding that a present loss would result in rendering the contract as a whole unprofitable. New York & Queens Gas Co. v. McCall, 245 U. S. 345, 38 Sup. Ct. 122, 62 L. Ed. 337; Puget Sound Traction, Light & Power Co. v. Reynolds, 244 U. S. 574, 37 Sup. Ct. 705, 61 L. Ed. 1325.

[3] Before a contract can be interfered with under the police power, it must appear that the contract does in some manner affect adversely the welfare of the public.

There is nothing in the records to show that the defendant brought to the notice of the commission any evidence that the company would be unable to perform its full duty to the community whose interest it is the function of the committee to protect.

The plaintiff relies upon the contract. By answer the defendant, as a justification for its demand for an increased rate, and for its threat to cut off the plaintiff's supply of electricity as a means of coercion to pay such increased rate, sets up its own action in filing an increased rate, and also the action of the Public Utilities Commission upon its request

for a waiver of the statutory notice and for allowing the rate to become effective.

Assuming that the Public Utilities Act afforded no other mode of relief than procedure under section 48 to enable the defendant on grounds of public interest to abrogate the terms of the contract with respect to rates, it was still the duty of the defendant under the statute to sustain the burden of proof that the increase was necessary in order to obtain a reasonable compensation for its service. It was also the duty of the commission to require proof sufficient to sustain this increase.

As the defendant has not invoked relief through the exercise of the power of the commission as a legislative agent to determine the question of the unreasonableness of the old rate and the reasonableness of the new rate, but merely to relieve it from statutory requirements as to notice, its only defense is its own act in increasing the rate. It has introduced no other justification than the consent of the commission to its request that it be made effective at once.

It has failed therefore to show that the legislative power delegated to the commission in the public interest has ever been exercised in the interest of the public in any mode pointed out in the Public Utilities Act.

The defendant is subject to public regulation only to the extent of the public interest in its business.

[4] Even if the commission had received an ex parte statement that a single contract was for the time being unprofitable, this was far from establishing the fact that the public interest had been injuriously affected.

[5] Should the defendant be permitted to carry out its threat of cutting off the supply of electrical energy, there would result great interference with plaintiff's business and damages difficult to estimate in an action at law. The case is therefore a proper one for equitable relief by injunction against coercion to yield to an illegal demand. American Railroad Co. of Porto Rico v. South Porto Rico Sugar Co. (C. C. A. 1st Circuit, November 24, 1923) 293 Fed. 670.

[6] It is also urged that the plaintiff has not adopted and exhausted its remedies under Public Utilities Act, § 18, by complaint before the commission, with an appeal to the Supreme Court of Rhode Island under section 34.

The question that would arise under section 18 would be as to the reasonableness of the rate, an administrative question. The plaintiff here does not raise that question, but only the question whether the defendant's claim that it has been relieved by legislative authority from the contract rate has any legal foundation. It does not raise the question of the reasonableness per se of what is claimed to be a newly established rate; it claims merely that nothing has been done by the defendant or the commission which has the legal effect of changing the old rate.

This is a judicial question, of which this court has jurisdiction in a suit between citizens of different states. While the Supreme Court of the state of Rhode Island under section 34 has jurisdiction on appeal

from an order of the commission, not only as to questions of unreasonableness of rates, but as to the unlawfulness of an order, this latter jurisdiction over a purely judicial question is not exclusive of the federal jurisdiction in a suit between citizens of different states. There seems to be no reason why the right of the plaintiff to seek an injunction against a threatened injury, and to escape unlawful coercion to pay a rate not established as a reasonable rate in accordance with the Public Utilities Act, should be subjected to the condition that it should first apply to the Commission to reverse its order. American Railroad Co. of Porto Rico v. South Porto Rico Sugar Co. (C. C. A.) 293 Fed. 670; Mitchell Coal Co. v. Pennsylvania Railroad Co., 230 U. S. 247, 33 Sup. Ct. 916, 57 L. Ed. 1472; People of Porto Rico v. American Railroad Co. of Porto Rico, 254 Fed. 367, 377, 378, 165 C. C. A. 589.

But one decision of the Supreme Court of Rhode Island relating to the Public Utilities Act has been cited. Rivelli v. Providence Gas Co., 44 R. I. 76, 77, 78, 115 Atl. 461 (Dec. 9, 1921):

"The schedule of rates was filed by the gas company with the commission as required by section 48, c. 795, Public Laws, 1912, known as the Public Utilities Act, which provides among other things that no change shall be made in existing rates excepting after 30 days' notice to the commission and to the public of the changes proposed to be made in the schedule then in effect, and the time when the change of rates will go into effect. The commission has no authority to fix rates for a public utility excepting when, after a hearing and investigation, it finds that the existing rates are unjust, unreasonable, insufficient or unjustly discriminatory, or to be preferential or otherwise in violation of the provisions of said Public Utilities Act. Section 21, c. 795, Public Laws, 1912."

While this case is not directly in point, it refers to and recognizes section 21 of this act as defining the authority of the commission and as establishing the rules of decision applicable in fixing rates. Section 48 should be construed consistently with section 21, and the proviso of section 48 should not be construed inconsistently with the body of section 48 and with section 21.

[7] The defendant further contends that the mere filing of a new schedule is in itself a valid method of changing rates, and that, even if the allowance of the filing of the new rate by the commission in accordance with section 48, did not amount to a finding as to the reasonableness of the rates, it yet waived the provision as to notice of changes, and permitted the defendant at an earlier time to exercise its own right to change a rate. It cites Pub. Ser. Com. v. Pavilion Nat. Gas Co., 232 N. Y. 146, 133 N. E. 427 (1921); Town of North Hempstead v. Pub. Ser. Corp., 231 N. Y. 447, 132 N. E. 144 (1921); Suburban Water Co. v. Oakmont Borough, 268 Pa..243, 110 Atl. 778 (1920); Duquesne Light Co. v. Pub. Ser. Com., 273 Pa. 287, 117 Atl. 63 (1922); North Coast Power Co. v. Kuykendall, 117 Wash. 563, 201 Pac. 780 (1921); Minneapolis, etc., R. R. v. Menasha W. W. Co., 159 Wis. 130, 150 N. W. 411, L. R. A. 1915F, 732 (1914); Cleveland & Eastern Traction Co. v. Pub. Ser. Com., P. U. R. 1923D, 853 (Ohio Sup. Ct.); Harrison Electric Co. v. Citizens' Ice & Storage Co., 149 Ark. 502, 232 S. W. 932 (1921); V. & S. Bottle Co. v. Mountain Gas Co., 261 Pa. 523, 104 Atl. 667 (1918); Denver & South Platte Ry. Co. v. City of Englewood, P. U. R. 1916E, 134 (Colorado Sup. Ct.).

It seems evident, however, that the defendant cannot itself exercise the police power of the state to relieve it in the public interest from a burdensome contract.

Nor can its own judgment be accepted by this court as a sufficient ground for disregarding the contract rights of the plaintiff. Rutland R. Lt. & Power Co. v. Burditt, 94 Vt. 421, 422, 111 Atl. 582; In re Searsport Water Co., 118 Me. 382, 393, 108 Atl. 452.

The question of the reasonableness of what it has attempted to do, and whether the public interest is such as to override the obligation of its contract, involves an administrative question, which cannot be determined by the defendant or by this court.

The statutory commission was created by the Legislature to determine such questions, and the proper course is to obtain that judgment. Legislative relief under reserved powers should be sought from the Legislature's administrative agent, the Public Utilities Commission. The result of proceedings before the commission fails to show that the defendant procured a finding of the commission that it was entitled to such relief, or that the commission, in allowing a new schedule to be filed, added anything of force to the act of the defendant in the filing of the rate.

The practical effect of what was done is the same as if, after filing of the rate, the period of 30 days, fixed by section 48 for notice, had elapsed without action by the commission.

The change therefore represents only the act of the defendant alone, and this is no ground for disregarding the contract right of plaintiff.

The power of the commission to fix a rate which shall relieve a contracting party from the obligations of a contract must be exercised as provided by the Rhode Island statute, which, when interpreted as the Supreme Court of the state has interpreted it in Rivelli v. Providence Gas Co., 44 R. I. 76, 78, 115 Atl. 461, requires a finding in accordance with section 21.

Wichita Railroad & Light Co. v. Public Utilities Commission of the State of Kansas, 260 U. S. 48, 43 Sup. Ct. 51, 67 L. Ed. 124, seems therefore not distinguishable on the ground that the statutory requirements are substantially different.

It is further urged that the order of the commission set up in defendant's answer is not subject to collateral attack.

But the legal objections to the defendant's new schedule involve no question of administrative discretion as to the reasonableness of this rate, but questions of law as to the effect of a proceeding under the proviso of section 48 and as to the statutory powers of the commission.

Of such questions the court has jurisdiction without preliminary resort to the commission. Great Northern Railway Co. v. Merchants' Elevator Co., 259 U. S. 285, 295, 42 Sup. Ct. 477, 66 L. Ed. 943.

[8] I am of the opinion that the plaintiff is entitled to an injunction to prevent damages from interference with its business and to prevent coercion to compel compliance with demands for a rate which is not established in accordance with the provisions of the Public Utilities Act, and that such injunction should continue until a new rate shall be established by act of the commission in accordance with the provi-

sions of that act. Relief by injunction, however, should be granted only on condition of the performance by the plaintiff of its obligation to pay according to the terms of the contract.

If, as the brief states, it has held the funds with which to make payment in separate deposits, ready to be turned over upon receipt of a correct statement of the amount due, which it could not have without information from defendant, it seems right to require, not only payment of the amount due as of the date when payable, but interest thereon at such rate as has been earned on such deposits, since it would be unjust for plaintiff to profit by delay. The failure of the defendant to make known the amount due may disentitle it to claim interest at the legal rate, but any actual earnings of interest on such parts of sums set aside in separate deposits may be treated as an increment of the amount due which belongs to defendant rather than to plaintiff.

The decree for an injunction may be made conditional upon the payment by the plaintiff of the sums due on the contract, with any actual increment of interest thereon. For all amounts paid pending this suit by plaintiff in excess of the contract rate, the plaintiff should have credit, with interest at 6 per cent.

A draft decree for an injunction and further relief in accordance with this opinion may be presented by the plaintiff.