WICHITA RAILROAD & LIGHT COMPANY *v.* PUBLIC UTILITIES COMMISSION OF THE STATE OF KANSAS ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 27. Argued April 24, 1922.—Decided November 13, 1922.

1. Jurisdiction acquired by the District Court on the ground of diverse citizenship, is not divested by the intervention, by leave of the court, of a party, opposed to and of like citizenship with the plaintiff, but whose presence is not essential to a decision of the original controversy. P. 53.
2. The jurisdiction of the District Court arising from diverse citizenship extends to the entire suit, and to every question, state or federal, involved in its determination. P. 54.
3. Where a plaintiff in equity successfully moves the District Court for judgment on the pleadings, reserving the right to adduce evidence and be heard on issues of mixed law and fact presented, a decree of the Circuit Court of Appeals, reversing the decree in his favor, should accord that opportunity, and not dismiss the bill. P. 54.
4. Under the Public Utility Law of Kansas, Laws 1911, c. 238, in order that an increase of rates, proposed by a gas company, may supersede lower rates fixed by its contract with another, it is not enough that the change be filed with and consented to by the Commission, under § 20; there must, under § 13, be an express finding by the Commission, after full hearing and investigation, that the existing rates are unjust, unreasonable, unjustly discriminatory, or unduly preferential; and without such finding the Commission's order is void. P. 56.

5. Such a finding may not be supplied by inference .and reference to the averments of the petition invoking the action of the Commission.  P. 59.

6. Delegation of pure legislative power is against constitutional principle; therefore, administrative agencies granted authority over rates are enjoined to follow designated procedure and rules of decision as a condition to the validity of their action.  P. 58. .

268 Fed. 37, reversed.

The Wichita Railroad & Light Company, a corporation of West Virginia, is an electric street railroad and light-furnishing company doing business in Wichita, Kansas, and will be known as the Wichita Company.  The Kansas Gas and Electric Company, also a West Virginia corporation, and to be known as the Kansas Company, is engaged in the business of furnishing electric light and power to consumers in Kansas. · In 1910, the two companies made a contract by which the Kansas Company agreed to furnish and the Wichita Company agreed to accept and pay for electrical energy, at certain rates, until 1930; and the contract was fulfilled by both until 1918.  Then the Kansas Company filed a petition with the Public Utilities Commission of Kansas, to be known as the Commission, in which it alleged that, on account of the increase in the cost of production and distribution,

" the net income of your petitioner for the year ending December 31, 1917, was approximately $190,000 less than it would and should have been if your petitioner had been able to operate under the normal conditions that existed in 1914, at which time its said rates were first installed as aforesaid; that if said rates are continued in effect hereafter the result thereof will be disastrous to your petitioner, depriving it of a reasonable return upon the value of its said property, and making it impossible to find a market for the securities it must issue and sell in order to provide funds with which to make improvements,

additions and betterments which are necessary, if it is to furnish proper and adequate service to the communities in which it operates."

The petition further recited that in December, 1916, being of opinion that it could reduce its rates for residential and commercial lighting, it proposed a gradual reduction and filed a schedule for the purpose, which the Commission had not acted on, that in January, 1917, it did reduce its rates, but that, if a further reduction under the schedule for 1918 were made, the loss of net earnings to the petitioner would be $220,000.

The petition continued:

"Your petitioner is of the opinion that in order to meet this situation, and in order to increase the net earnings of your petitioner in an amount sufficient to offset the loss resulting to it from the conditions above stated, an order should be entered by the Commission authorizing petitioner to add to its existing rates the surcharge hereinafter set out. There are approximately 19,900 consumers now served by your petitioner; the proposed surcharge does not affect consumers using 100 kilowatt hours or less per month, and, therefore, 17,000 of said total of 19,900 consumers are not affected. In apportioning the surcharge equitably among the remainder of said consumers, your petitioner has taken into consideration the fact that in the generation of electrical energy for large power consumers fuel is approximately 75 per cent of the cost of the generation, and that, therefore, a surcharge which has for its purpose the reimbursement of the utility company for increase in the cost of fuel, should be so adjusted that the surcharge should increase in proportion to the amount of energy consumed. The percentage of increase fixed by such surcharge over existing rates is, therefore, increased in proportion to the amount of consumption. The last

step in said surcharge schedule affects 6 consumers, and the last two steps 38 consumers.

"Wherefore, your petitioner asks that an order be made by your Honorable Commission authorizing your petitioner to add to its existing rates for electricity in the State of Kansas, and until the further order of the Commission the following surcharges:

For the first 100 kwh per month, no surcharge.

For the next 1,000 kwh per month, 12 mills net per kwh.

For the next 10,000 kwh per month, 9.5 mills net per kwh.

For the next 1,000,000 kwh per month, 8. mills net per kwh.

For all excess kwh per month, 3.5 mills net per kwh."

The order of the Commission upon this petition recited that it "came duly on for order by the Commission upon the pleadings of the respective parties and the evidence introduced thereunder; and the Commission upon consideration of said pleadings and evidence and being duly advised in the premises, finds that the Kansas Gas & Electric Company should be authorized and permitted to add to its existing rates for electricity supplied by it to consumers in the State of Kansas, until the further order of the Commission, the following net surcharge:

For the first 100 kwh per month, no surcharge.

For the next 14,900 kwh per month, 1 mill surcharge per kwh.

For the next 20,000 kwh per month, 2 mills surcharge per kwh.

For all excess over 35,000 kwh per month, 3 mills surcharge per kwh."

The rates thus fixed were substantially higher than the contract rates.

The Wichita Company, thereupon, filed a bill in equity in the United States District Court for Kansas seeking to

enjoin the Commission from putting the new rates in force as against it. After averring the diverse citizenship of the parties and a sufficient jurisdictional amount involved, the bill alleged that the order impaired the contract which it had with the Kansas Company, in violation of Article I, § 10 of the Federal Constitution, that the rates fixed were unjust and unjustly discriminatory as against the complainant, that it was the largest customer of the Kansas Company, and that the increase of its rate as compared with that of others violated every equitable rule of rate-making and deprived the plaintiff of its property without due process, and denied it the equal protection of the laws, in violation of the Fourteenth Amendment. A temporary injunction was issued. The answer of the Commission averred that the proceedings were regular and authorized by the statute of Kansas, that the Wichita Company had participated in them, and denied that the surcharges were discriminatory or unjust. The Kansas Company then applied for leave to intervene, and leave was granted. It answered the bill much as the Commission did, but with more elaboration, denying that the order was discriminatory or unjust, and averring that the contract of 1910 was necessarily subject to the legitimate exercise of the police power of the State, and that an order of the Commission regularly made in the exercise of that power could not be regarded as working an impairment of the obligation of the contract in the sense of the contract clause of the Federal Constitution.

The Wichita Company made a motion for judgment on the pleadings, on the ground that the order of the Commission was void on its face, but saved and reserved to itself " all of its rights in the presentation of evidence and proof and hearing upon the merits of the issues of fact and law otherwise than as above stated; involved in this

cause, in the event it should be determined that final judgment and decree should not be entered pursuant to this motion."

The District Court gave judgment for the Wichita Company on the pleadings and enjoined the Commission and the Kansas Company from putting into force the increased rates. The Circuit Court of Appeals reversed the decree of the District Court and directed a dismissal of the bill, Judge Sanborn dissenting.

The Wichita Company has appealed to this Court.

*Mr. Henry I. Green,* with whom *Mr. Thomas F. Doran* was on the briefs, for appellant.

*Mr. H. L. McCune,* with whom *Mr. A. E. Helm* was on the briefs, for appellees.

MR. CHIEF JUSTICE TAFT, after stating the case as above, delivered the opinion of the Court.

The appellees urge that the concession of the appellant that contracts in respect to the rates to be charged by a public utility are subject to suspension or abrogation by the police power of the State validly exercised through an administrative agency takes out of this case any federal question, because the issue then is only a state question, to wit, whether, under the state statute, the police power was validly exercised. Upon this ground they insist that the bill should have been, and must be now, dismissed for want of jurisdiction and without any inquiry into the other issues of law and fact. The original bill set out two grounds of jurisdiction, first that of diverse citizenship, and, second, that the case arose under the Federal Constitution in that the order violated the contract clause of the Federal Constitution, and also the Fourteenth Amendment. The intervention of the Kansas Company, a citi-

zen of the same State as the Wichita Company, its opponent, did not take away the ground of diverse citizenship. That ground existed when the suit was begun and the plaintiff set it forth in the bill as a matter entitling it to go into the District Court. Jurisdiction once acquired on that ground is not divested by a subsequent change in the citizenship of the parties. *Mullen* v. *Torrance,* 9 Wheat. 537, 539; *Clarke* v. *Mathewson,* 12 Pet. 164, 171; *Koenigsberger* v. *Richmond Mining Co.,* 158 U. S. 41, 49; *Louisville, New Albany & Chicago Ry. Co.* v. *Louisville Trust Co.,* 174 U. S. 552, 566. Much less is such jurisdiction defeated by the intervention, by leave of the court, of a party whose presence is not essential to a decision of the controversy between the original parties. See Equity Rule 37. *Adler* v. *Seaman,* 266 Fed. 828, 841; *King* v. *Barr,* 262 Fed. 56, 59; *Jennings* v. *Smith,* 242 Fed. 561, 564. The Kansas Company, while it had an interest and was a proper party, was not an indispensable party. *In re Engelhard,* 231 U. S. 646.

The jurisdiction of the District Court was not limited to federal questions presented by the bill, but extended to the entire suit and every question, whether federal or state, involved in its determination.

The appellant assigns for error that the Circuit Court of Appeals, by directing a dismissal of the bill, refused it a hearing on the truth of the averments of the answer as to the validity of the order, and also on the issue made by the bill and answer as to whether the rates, as fixed by the Commission, deprived it of its property without due process of law and denied it the equal protection of the laws. In this ruling we think there was error..

The stress in the hearing on the motion was put on the two contentions, one, that the order of the Commission was void on its face for lack of a necessary finding that the existing contract rates were unreasonably low, and. the other, that the facts averred in the petition of the

Kansas Company to the Public Utilities Commission were not sufficient to justify such a finding if it had been made. The District Court sustained the contention; the Court of Appeals denied it. The motion for judgment being overruled, the complainant should have been accorded an opportunity, the right to which it had carefully reserved, to traverse the allegations of fact by the Kansas Company as to the basis for the order of the Commission and also to maintain by evidence and argument the issue as to due process of law and the equal protection of the law. The charge that the order made a classification denying due process and the equal protection of the law was a mixed question of law and fact, upon which the complainant had a right to be heard. Neither court passed on it. For this reason, if there was nothing else, the decree of the Circuit Court of Appeals would have to be reversed. *Lane* v. *Pueblo of Santa Rosa*, 249 U. S. 110, 114.

There still remain for our consideration the questions upon which the courts below differed.

The Public Utility Law of Kansas, c. 238 of the Session Laws of 1911, creates a commission and makes full provision for its procedure and powers. Section 13 provides that:

" It shall be the duty of the commission, either upon complaint or upon its own initiative, to investigate all rates, . . . fares . . . and if after full hearing and investigation the commission shall find that such rates . . . are unjust, unreasonable, unjustly discriminatory or unduly preferential, the commission shall have power to fix and order substituted therefor such rate or rates . . . as shall be just and reasonable."

Section 14 and § 15 require the complaint against rates, etc., to be in writing, and a formal public hearing of which due notice is to be given to the parties interested.

Section 15 directs how the notice shall be given and how long before the hearing and its contents.

Section 16 provides that if upon such hearing the rates, etc., of any public utility are found to be unjust, unreasonable, unfair, unjustly discriminatory or unduly preferential, the Commission shall have power to fix and substitute therefor rates, etc., " as it shall find, determine or decree to be just, reasonable and necessary." It provides that all orders and decisions of the Commission whereby any rates, etc., are altered, changed, modified, fixed or established, shall be served on the public utility affected thereby and that such public utility, unless an action is commenced, in a court of proper jurisdiction, to set aside " the findings, orders and decisions " of the Commission or to review and correct the same, shall carry the provisions of the order into effect.

Section 20 provides that, whenever any public utility shall desire to make a change in any rate or rates, it shall file with the Commission a schedule showing the changes desired to be made and put in force by such public utility, but that no change shall be made in any rate without the consent of the Commission and within thirty days after such changes have been authorized by the Commission copies of such schedule shall be filed in every station, office or depot of such public utility for public inspection.

It is said that the order in this case was authorized by § 20 and therefore that all that was needed was the filing of a schedule of changed rates and the consent of the Commission, and that no finding was required as in § 13 and § 16.  This construction of § 20 is doubtless correct, but it shows that the filing of a schedule of changed rates under that section cannot accomplish the result of abrogating contract rates.  It could not do so any more than would the original filing of a schedule of rates under § 11 requiring every public utility to publish and file with the Commission all schedules of rates do this.  The consent of the Commission in § 20 is made necessary only to prevent changing schedules without notice to the Commis-

sion and thus to secure a proper supervision of schedules. Such consent does not involve a hearing or a finding and a decision. The section does not, therefore, cover, or measure the essentials of, the proceeding in this case before the Commission which the order shows was upon pleadings and *inter partes*. We find nothing in *State ex rel. Caster* v. *Kansas Postal-Telegraph Cable Co.*, 96 Kans. 298, which gives a different construction to § 20.

The majority opinion in the Circuit Court of Appeals in maintaining the validity of the order in this case relies on § 18 of the act, which provides that all orders, rates, etc., fixed by the Commission shall be in force thirty days thereafter and shall be *prima facie* reasonable until changed by the Commission or by a court; and holds from this that it must presume that there was substantial evidence to warrant the findings. But as we have seen there is no finding of reasonableness or unreasonableness. Nor can we suppose that the presumption was to obtain until there was such a finding.

The Supreme Court of Kansas, in applying the statute, recognizes that a contract for rates with a public utility can not be abrogated except after a finding by the Commission that they are unreasonable. This is made clear by the decision in *Kaul* v. *American Independent Telephone Co.*, 95 Kans. 1. In that case, a number of customers sought to enjoin a telephone company from disconnecting their lines because they did not pay the schedule rates published and filed with the Commission under the law of 1911 we are considering. The complainants showed an agreement by the Telephone Company made before the Act of 1911, by which the Telephone Company had engaged to furnish them the service at lower than the published schedule rates on file with the Commission. The injunction was granted. The court said:

"While that commission is vested with broad regulatory powers it is not shown nor claimed that it has found

the contract rates to be unreasonable. Granting, without deciding, that the commission has the power under the law to determine whether or not the rates prescribed by the contract are reasonable and valid, and to revise them if found to be unreasonable, it does not appear that it has exercised the power, nor that they have been presented to it for its consideration. The passage of the act did not automatically overthrow contracts, nor set aside schedules of rates which had been agreed upon. Neither did the fact that the defendant published and filed a schedule of rates with the public utilities commission abrogate the contract. In any event, rates previously agreed upon between utilities and patrons will continue in force until the commission has found them to be unreasonable, and has prescribed other rates."

The proceeding we are considering is governed by § 13. That is the general section of the act comprehensively describing the duty of the Commission, vesting it with power to fix and order substituted new rates for existing rates. The power is expressly made to depend on the condition that after full hearing and investigation the Commission shall find existing rates to be unjust, unreasonable, unjustly discriminatory or unduly preferential. We conclude that a valid order of the Commission under the act must contain a finding of fact after hearing and investigation, upon which the order is founded, and that for lack of such a finding, the order in this case was void.

This conclusion accords with the construction put upon similar statutes in other States. *Public Utilities Commission* v. *Springfield Gas & Electric Co.*, 291 Ill. 209; *Public Utilities Commission* v. *Baltimore & Ohio Southwestern R. R. Co.*, 281 Ill. 405. Moreover, it accords with general principles of constitutional government. The maxim that a legislature may not delegate legislative power has some qualifications, as in the creation of municipalities, and also in the creation of administrative

boards to apply to the myriad details of rate schedules the regulatory police power of the State. The latter qualification is made necessary in order that the legislative power may be effectively exercised. In creating such an administrative agency the legislature, to prevent its being a pure delegation of legislative power, must enjoin upon it a certain course of procedure and certain rules of decision in the performance of its function. It is a wholesome and necessary principle that such an agency must pursue the procedure and rules enjoined and show a substantial compliance therewith to give validity to its action. When, therefore, such an administrative agency is required as a condition precedent to an order, to make a finding of facts, the validity of the order must rest upon the needed finding. If it is lacking, the order is ineffective.

It is pressed on us that the lack of an express finding may be supplied by implication and by reference to the averments of the petition invoking the action of the Commission. We can not agree to this. It is doubtful whether the facts averred in the petition were sufficient to justify a finding that the contract rates were unreasonably low; but we do not find it necessary to answer this question. We rest our decision on the principle that an express finding of unreasonableness by the Commission was indispensable under the statutes of the State.

We think the motion for judgment on the pleadings should have been granted.

*The decree of the Circuit Court of Appeals is reversed and that of the District Court is affirmed.*