## SPRINGFIELD GAS & ELECTRIC CO. v. PUBLIC SERVICE COMMISSION OF MISSOURI et al.

(District Court, W. D. Missouri, W. D. November 23, 1925.)

No. 529.

1. **Courts** ⬅489(1)—**Public utility, claiming order of Public Service Commission was confiscatory, held entitled to resort to federal courts at once.**

Public utility, claiming that order of state Public Service Commission establishing rates was confiscatory, in violation of Fourteenth Amendment and Const. Mo., art. 2, § 30, *held* entitled to resort to federal courts at once without first exhausting remedy in state courts,

2. **Public service commissions** ⬅18—**Public Service Commission should make finding supporting order establishing lower rates.**

Public Service Commission should find that existing rates are unreasonable, to support its order establishing lower rates.

3. **Public service commissions** ⬅7—**Fair present value of property is value used for rate-making purposes.**

Value of public utility for rate-making purposes is fair present value of its property devoted to service of public, and neither prudent investment nor historic cost are controlling, though they may be considered.

4. **Gas** ⬅14(1)—**Allowance of 10 per cent. of replacement cost as going concern value held proper.**

Allowance of approximately 10 per cent. of replacement cost as going concern value *held* proper, in determining value of gas company's property for rate-making purposes.

**5. Gas ☞14(1)—Value of property held properly proved by actual appraisement.**

Fair present value of gas company's property was properly proved by testimony of actual appraisement and other methods showing actual fair present value.

**6. Gas ☞14(1)—Utility entitled to return reasonably sufficient to insure financial soundness.**

Gas company is entitled to return reasonably sufficient to insure confidence in its financial soundness.

**7. Gas ☞14(1)—Eight per cent. held fair return.**

Eight per cent. on property of gas company *held* fair return.

**8. Gas ☞14(1)—Allowance for depreciation held deductible as expense.**

Allowance of 2 per cent., authorized by Public Service Commission as depreciation to be deducted annually from net income as permanent maintenance or replacement found, *held* deductible from income as expense.

**9. Constitutional law ☞70(1)—Federal court considers only question of confiscation, and not rate-making.**

In suit to vacate order of Public Service Commission establishing lower rates as confiscatory, under Fourteenth Amendment and Const. Mo. art. 2, § 30, court is concerned only with confiscation, and not with rate-making.

In Equity. Suit by the Springfield Gas & Electric Company against the Public Service Commission of the State of Missouri and others. Decree for plaintiff.

Hawkins, Delafield & Longfellow, of New York City, Frank B. Williams, of Springfield, Mo., and Busby, Sparrow & Patterson, of Kansas City, Mo., for plaintiff.

L. H. Breuer, of Rolla, Mo., and Frank E. Atwood, of Jefferson City, Mo., for defendants.

REEVES, District Judge. Proceeding in equity to vacate an order of the defendant commission. It is charged in substance that such order is invalid, because confiscatory of plaintiff's property. Plaintiff is a Missouri corporation, engaged in the manufacture, sale, and distribution of gas in the city of Springfield, Mo., and vicinity. The defendants are the Public Service Commission of the state of Missouri, including its several members, L. H. Breuer, its counsel when the bill was filed, and Jesse W. Barrett, who at said time was Attorney General of the state.

The order complained against was made October 10, 1923. Previous to that date, the Public Service Commission had permitted plaintiff to use the following schedule in its charges to consumers of gas: The first 3,000 cubic feet used per month, per M. cubic feet, $1.65 net; next 5,000 cubic feet used per month, per M. cubic feet, $1.55 net; next 10,000 cubic feet used per month, per M. cubic feet, $1.40 net; next 15,000 cubic feet used per month, per M. cubic feet, $1.30 net; all over 33,000 cubic feet used per month, per M. cubic feet, $1.25 net. The minimum charge per month, $1.

On the date mentioned the defendant commission, by its order, made a horizontal cut of 15 cents on each net rate item of the schedule, save the minimum charge of $1 per month. This new schedule of rates thus promulgated by the defendant commission contemplated a valuation of plaintiff's gas plant, used and useful in the public service, at $800,000, as of December 31, 1922. In its report the commission deemed 7 per cent. to be a reasonable return, and fixed 2 per cent. as a reasonable allowance for depreciation on depreciable property.

Plaintiff alleges that the fair present value of its property, used and useful in its gas service on December 31, 1922, was at least $1,190,715, and that the rates for gas service fixed by the commission, as above stated, "are unreasonably low, unremunerative, and confiscatory," and that by reason thereof the order is violative of section 1 of the Fourteenth Amendment to the Constitution of the United States and section 30, article 2, of the Constitution of the state of Missouri.

Plaintiff seeks protection from the enforcement of said order and from any interference with the plaintiff in "charging and collecting just, reasonable, and lawful rates for the plaintiff's said gas service." The defendants, by their answer, admit substantially all the allegations of the petition, but deny that the value of plaintiff's property is greater than that fixed by the commission, or that the schedule of rates promulgated is confiscatory. Moreover, the answer challenges the jurisdiction of this court, alleging that plaintiff has a complete remedy at law in the state courts of Missouri. Some question was raised regarding the personnel of the defendants. This arises from the usual succession in public office, and involves a mere clerical task of revising the names of the parties defendant, so as to include the present individuals who function the offices named.

Upon the issues made by the pleadings, trial was had and much testimony adduced, chiefly on behalf of the plaintiff, touching the questions of property valuation and the return on the investment to investors. From the mass of testimony on the subject of the

value of plaintiff's property, there is little controversy between the parties. The valuation as placed by the Public Service Commission took into account the original cost of the property, whereas the plaintiff claimed that a valuation of the property, as of December 31, 1922, should be used independently of original costs.

The appraisals made on behalf of the plaintiff fixed the total value of the company's property as of December 31, 1922, at $1,179,495. This valuation was based upon current costs, and made no allowance for depreciation either for obsolescence or use. This might be designated as replacement cost. The chief engineer for the Public Service Commission acquiesced in the accuracy of these figures as to reproduction or replacement cost as of December 31, 1922, but denied that the figure represented the value of the property as of that date.

The testimony in the matter of depreciation showed that there was in fact no deterioration in the plant, but that, on the contrary, it was in 100 per cent. condition. Some of the experts who testified for plaintiff even asserted "that the present plant is better than a new one," and that "in a well-maintained plant, such as the Springfield plant, deterioration is almost negligible in its influence on value."

There was offered in evidence a number of sections of cast iron and steel pipes, or mains, used as conduits for gas. These were taken at random over the system. No effect of use was observable, and the testimony showed that some of the sections had been in the ground for a long period of years. It appeared that long use has practically no effect on wrought iron or steel gas mains, or service pipes, and that such equipment can be used indefinitely. There was testimony, however, on behalf of the plaintiff, that a perfect rehabilitation of the plant would involve an expenditure of $24,214. The testimony of the defendants was that the original cost of the plant would not exceed $800,000.

A controversy arose on the item of $52,077, included in the figures of $1,179,495. This is the amount set apart by plaintiff for working capital. It was contended by the defendant that such an amount is excessive. The testimony tended to show that there was no segregation of the working capital of the Springfield Gas & Electric Company with respect to its gas department, apart from the other utility departments. The accountants, by allocating various items of working capital to the several departments, apportioned the sum of $32,504.71, as of December 31, 1911, which amount it was stated rose to $107,190.52 on December 31, 1921, and then decreased until, on December 31, 1923, it amounted to $59,952.61. The testimony supported the amount fixed by the company at $52,077 as a proper sum.

Another item in controversy was that of going value. This was fixed by the commission at $40,000, whereas the plaintiff claims $117,949. There was testimony that this would be a proper allowance. The maximum value of the plant fixed by plaintiff in its testimony was $1,297,444, as against a value of $800,000 claimed by defendants. There was also testimony as to a proper rate of return. Other facts will be noted and discussed, if they become pertinent, in the course of the opinion.

[1] 1. Defendants say that this court is without jurisdiction, because plaintiff has not exhausted its remedy at law in the state courts of Missouri. It was held in Bacon v. Rutland R. R. Co., 232 U. S. 134, that under circumstances like this the plaintiff would have a right to resort to the courts of the United States at once.

[2] 2. It is urged by the defendants that the order of October 10, 1923, was invalid on its face, and that therefore a decree should go for plaintiff, without regard to other questions raised. The Missouri statutes provide that the commission will only have authority to prescribe just and reasonable rates and charges when it shall appear to the commission that adopted rates "are unjust, unreasonable, unjustly discriminatory, or unduly preferential, or in any wise in violation of any provisions of law." Rev. St. Mo. 1919, § 10456.

The commission by its report and order found in substance that the new schedule of rates would be reasonable, but did not find the previous schedules were unreasonable or otherwise offensive to the rule laid down by the statute. Undoubtedly the commission should have made a finding of facts upon which to rest the order. Wichita R. R. v. Public Utilities Commission, 260 U. S. 48, loc. cit. 58, 59, 43 S. Ct. 51, 67 L. Ed. 124.

Plaintiff does not urge, however, that the opinion shall rest upon this contention, and the court would be unwilling to say, on examination of the report and order of the commission, that an inference might not be drawn of such facts as would sustain the order.

[3] 3. The parties are in substantial agreement that the base for rate-making is the

present fair value of the property devoted to the service of the public, and, moreover, both parties are in agreement that various factors may be used to aid the court in reaching a conclusion as to what is the present fair value. No artificial rule would be permitted to defeat a correct conclusion in this regard. Neither "prudent investment nor historic cost" will become controlling factors, although probably relevant facts. The rule of "fair present value" is established by a long line of decisions, beginning with Smyth v. Ames, 169 U. S. 466, 18 S. Ct. 418, 42 L. Ed. 819, and has been followed down to the more recent cases of Missouri ex rel. Southwest Telephone Co. v. Public Service Commission, 262 U. S. 276, 43 S. Ct. 544, 67 L. Ed. 981, 31 A. L. R. 807.

[4] Adverting, therefore, to the facts in the case, the testimony not only predominated, but was practically one way, that the fair present value of plaintiff's property, used and useful in the public service on December 31, 1922, was $1,273,230. This includes an item of going value in the sum of $117,949. The parties in like manner are in agreement that some sum should be allowed for going value. Des Moines Gas Co. v. City of Des Moines, 238 U. S. 153, loc. cit. 169, 35 S. Ct. 811, 59 L. Ed. 1244; Galveston Electric Co. v. City of Galveston et al., 258 U. S. 388, 42 S. Ct. 351, 66 L. Ed. 678; City of Minneapolis v. Rand et al. (C. C. A.) 285 F. 818, loc. cit. 830.

Plaintiff's testimony tended to show that this item should be allowed at the above figure. This is approximately 10 per cent. of the cost of the reproduction or replacement cost. The usual percentage allowed by the courts and Public Service Commissions varies from 27.9 per cent. to 7.5 per cent. of the cost of reproduction. According to the testimony, the average in all of the court cases was 10.4 per cent., whereas the average in all public utilities cases was 15.4 per cent. It was in evidence that the Public Service Commission of Missouri, in the case of City of Kansas City v. Kansas City Telephone Co., 11 Mo. Pub. Service Com. Rep. 1. c. 749, allowed 10 per cent. of the reproduction cost for going value, and that such an allowance has been made in other cases. Upon the testimony, the court must accept plaintiff's claim as reasonable and proper.

[5] 4. Plaintiff was permitted to prove the fair present value of its property by testimony of an actual appraisement thereof, and by other methods designed to inform the court as to its actual fair present value. This was proper. Knoxville v. Water Co., 212 U. S. 1, 29 S. Ct. 148, 53 L. Ed. 371; Minnesota Rate Cases, 230 U. S. 352, 33 S. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18; Cedar Rapids Gas Co. v. Cedar Rapids, 223 U. S. 655, 32 S. Ct. 389, 56 L. Ed. 594. In the case at bar the court heard testimony from experts to the effect that the prices of various items of equipment going into the plant had been stabilized over a period of at least three years, and that there did not exist at the date of valuation any fluctuations or abnormal conditions with respect to such prices.

[6, 7] 5. The rate of return asked by plaintiff is 8½ per cent. That plaintiff is entitled to such a return as will be reasonably sufficient to insure confidence in the financial soundness of the utility is beyond question. Under the testimony 8 per cent. appears to be a reasonable and fair return. Such return is in like manner sustained under the law. Bluefield Co. v. Public Service Comm'n, 262 U. S. 679, 43 S. Ct. 675, 67 L. Ed. 1176; Joplin Gas Co. v. Public Service Comm'n (D. C.) 296 F. 271; Missouri ex rel. S. W. Telephone Co. v. Public Service Comm'n, 262 U. S. 276, 43 S. Ct. 544, 67 L. Ed. 981, 31 A. L. R. 807; Alton Water Co. v. Illinois Commerce Comm'n (D. C.) 279 F. 869. There was some testimony, however, that 8½ per cent. would be a fair and proper return.

[8] The defendant commission allowed the plaintiff 2 per cent. on its depreciable property to be deducted annually from the net income as a permanent maintenance or replacement fund. There is no reason why that percentage should not be assumed here in the consideration of this case. The plaintiff is entitled to earn this before reaching the matter of profit. Knoxville v. Water Co., 212 U. S. 1, 29 S. Ct. 148, 53 L. Ed. 371; Galveston Electric Co. v. Galveston, 258 U. S. 388, 42 S. Ct. 351, 66 L. Ed. 678.

[9] In view of the foregoing, the rates promulgated by the defendant Public Service Commission, by its order of October 10, 1923, have the effect to confiscate plaintiff's property and is violative of section 1, Fourteenth Amendment to the Constitution of the United States and therefore invalid.

Plaintiff is entitled to relief in this court, and a decree will be entered in accordance with its prayer. The concern of the court is only with confiscation, and not with rate-making. Pacific Gas Co. v. San Francisco, 265 U. S. 403, 44 S. Ct. 537, 68 L. Ed. 1075.